UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS MERVYN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NELSON WESTERBERG, INC., NEWESCO, INC., NELSON WESTERBERG INTERNATIONAL, and ATLAS VAN LINES, INC., <br><br> Defendants. | 11 C 6594 <br><br> Judge Feinerman |

## MEMORANDUM OPINION AND ORDER

In this putative class action against Nelson Westerberg, Inc., Newesco, Inc., Nelson Westerberg International (collectively "Newesco"), and Atlas Van Lines, Inc., Thomas Mervyn alleges violations of 49 C.F.R. § 376.12, a provision of the Truth-in-Leasing regulations promulgated by the Federal Motor Carrier Safety Administration to implement the Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (codified as amended in scattered sections of 49 U.S.C.), as well as common law unjust enrichment. Docs. 1, 27. The court denied Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except insofar as the complaint sought the remedies of disgorgement, restitution, or constructive trust for the § 376.12 claims. Docs. 108-09 (reported at 2012 WL 6568338 (N.D. Ill. Dec. 17, 2012)). After Defendants moved for summary judgment, Doc. 135, the court granted Mervyn's request for additional discovery under Rule 56(d), Doc. 156. Defendants then supplemented and renewed their summary judgment motion. Doc. 168. The motion is denied.

**Background**

The following facts are set forth as favorably to Mervyn as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Only those facts pertinent to the legal issues discussed below or that provide appropriate background are included.

Mervyn is an independent owner-operator of a moving truck who has driven trucks and leased them to various entities for decades. Doc. 216 at ¶ 1. In February 2010, Mervyn entered into a Contractor Agreement and Lease ("Lease") with Newesco to haul shipments for Atlas, with Newesco designated as "Agent," Mervyn designated as "Contractor," and Atlas designated as "Carrier." Doc. 176 at ¶ 1; Doc. 216 at ¶¶ 13-14. The Lease sets forth the terms and conditions of Mervyn's relationship with Newesco and Atlas, including compensation. Docs. 177-1, 177-2. Mervyn hauled thirty-three shipments before terminating the Lease in January 2011. Doc. 176 at ¶¶ 1, 18.

**Discussion**

**I.  The § 376.12 Claims**

Mervyn's § 376.12 claims allege that Defendants, by violating various provisions of the Lease, also violated § 376.12. Doc. 1 at ¶¶ 24-52.

**A.  The Scope of § 376.12**

Defendants' first ground for summary judgment on the § 376.12 claims is purely legal; they contend that § 376.12 governs only the content of the Lease and does not require actual compliance therewith, and that because Mervyn alleges only that Defendants did not comply with the Lease, Mervyn has no § 376.12 claim. Doc. 137 at 6-9. Defendants are right that Mervyn challenges only their compliance with the Lease and does not allege that the Lease's

content fails to comply with § 376.12. But Defendants are wrong to argue that § 376.12 governs only the Lease's content, for it also plainly requires compliance with the Lease's terms.

It is true that the individual subsections of § 376.12 referenced in the complaint and Mervyn's briefs address only the required content of a lease:

> (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services *shall be clearly stated on the face of the lease* or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. The amount to be paid *may be expressed* as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.
>
> \* \* \*
>
> (g) Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, *the lease must specify* that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. When a computer-generated document is provided, *the lease will permit lessor to view*, during normal business hours, a copy of any actual document underlying the computer-generated document. Regardless of the method of compensation, *the lease must permit lessor to examine* copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.
>
> (h) Charge-back items. *The lease shall clearly specify* all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.

3

The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

* * *

(k) Escrow funds. If escrow funds are required, *the lease shall specify*:

   (1) The amount of any escrow fund or performance bond required to be paid by the lessor to the authorized carrier or to a third party.

   (2) The specific items to which the escrow fund can be applied.

   (3) That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund. The carrier shall perform this accounting in one of the following ways:

      (i) By clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund; or

      (ii) By providing a separate accounting to the lessor of any transactions involving the escrow fund. This separate accounting shall be done on a monthly basis.

   (4) The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time.

   (5) That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, the carrier may deduct a sum equal to the average advance made to the individual lessor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91-day, 13-week Treasury bills as established in the weekly auction by the Department of Treasury.

   (6) The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The *lease shall further specify* that in no event shall the escrow fund be returned later than 45 days from the date of termination.

49 C.F.R. § 376.12(d), (g), (h), (k) (emphasis added).  However, right after stating that "the written lease … shall contain the following provisions," the introductory paragraph of § 376.12 plainly requires the carrier to actually comply with those provisions: "The required lease provisions *shall be adhered to and performed* by the authorized carrier."  49 C.F.R. § 376.12 (emphasis added).  That the regulation requires compliance with the lease's terms is clear from its text; there is no other conceivable way to read it.

This conclusion regarding the scope of § 376.12 finds support in *Owner-Operator Independent Drivers Association v. Mayflower Transit, LLC*, 615 F.3d 790 (7th Cir. 2010).  There, the Seventh Circuit cited § 376.12(j)(1) for the proposition that "[f]ederal regulations require motor carriers to have insurance for the protection of the public, which may be injured by collisions on the highway."  *Id*. at 791.  Section 376.12(j)(1) itself provides only that "*[t]he lease shall clearly specify* the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public," that "*[t]he lease shall further specify* who is responsible for providing any other insurance coverage for the operation of the leased equipment," and that "*the lease shall specify* the amount which will be charged-back to the lessor."  49 C.F.R. § 376.12(j)(1) (emphasis added).  Yet the Seventh Circuit read that provision as imposing a substantive obligation to comply with the lease provisions whose inclusion § 376.12(j)(1) requires; as Judge Barker recognized in handling the case in the district court, the source of that substantive obligation is the introductory language quoted above.  *See Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 2006 WL 1547084, at *5 (S.D. Ind. June 1, 2006).

Likewise, the Seventh Circuit cited § 376.12(i) as "provid[ing] that 'the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement.'"  *Mayflower Transit*, 615 F.3d at 791.

5

Actually, § 376.12(i) says only that "*[t]he lease shall specify* that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." 49 C.F.R. § 376.12(i) (emphasis added). Yet for the reasons just stated, the Seventh Circuit was not wrong in saying that § 376.12(i) imposed a substantive obligation on the carrier, as the regulation's introductory language requires carriers to actually comply with the lease terms that the regulation's subsections, like § 376.12(i), mandate for inclusion in the lease.

The court recognizes that some decisions have held that a carrier's violation of a lease does not itself violate § 376.12. *See Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) ("The Owner-Operators also argue that Landstar violated the 'Actual Payment Clause' of the leases when it failed to reimburse the Owner-Operators for undisclosed profits. The District Court correctly concluded that this damage theory is based on a breach of a lease provision, not a violation of § 376.12. Because the Owner-Operators failed to bring a breach of contract claim, this issue is not properly before the Court."); *Maradiaga v. Intermodal Bridge Transp., Inc.*, 899 F. Supp. 2d 551, 562 (N.D. Tex. 2012) ("IBT's alleged failure to compensate Plaintiffs as agreed … is not a violation of section 376.12."). Those decisions are unpersuasive, however, because they fail to acknowledge, let alone address, the regulation's introductory language.

**B.      Whether Defendants In Fact Breached the Lease**

In the alternative to their purely legal defense to Mervyn's § 376.12 claims, Defendants delve into the facts to argue that the summary judgment record indisputably shows that they in fact did not breach the Lease, that the alleged breaches took place outside the applicable limitations period, and that Newesco cannot be held liable for any such breaches. Doc. 137 at 9-

6

26, 28-29; Doc. 170; Doc. 198.  In making these arguments, Defendants' briefs cite to raw record materials rather than to the parties' Local Rule 56.1 statements and responses.  It has long and repeatedly been held that doing so violates Local Rule 56.1.  *See Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 838-39 (N.D. Ill. 2013); *Jacobeit v. Rich Twp. High Sch. Dist. 227*, 2012 WL 1044509, at *2 (N.D. Ill. Mar. 28, 2012); *Loop Paper Recycling, Inc. v. JC Horizon Ltd.*, 2011 WL 3704954, at *5 n.8 (N.D. Ill. Aug. 17, 2011); *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *2 (N.D. Ill. Mar. 30, 2011); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"); *Alvi v. Metro. Water Reclamation Dist. of Greater Chi.*, 2006 WL 1762032, at *2 (N.D. Ill. June 23, 2006) ("Mr. Alvi's response memorandum is written without ever referencing the Rule 56.1 factual filings, and instead improperly cites to raw discovery record material.  This citation practice is materially improper."); *Madaffari v. Metrocall Cos. Grp. Policy GL*, 2005 WL 1458071, at *1 (N.D. Ill. June 15, 2005) ("when citing to the record in their legal memoranda, parties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record"); *Ciesielski v. Hooters of Am., Inc.*, 2004 WL 1699020, at *1 (N.D. Ill. July 28, 2004) ("In their summary judgment briefs, both parties cited directly to the record rather than to their Rule 56.1 statements.  This blatant violation of the Local Rules is improper."); *Denari v. Genesis Ins. Co.*, 2003 WL 22964371, at *1 n.3 (N.D. Ill. Dec. 15, 2003) ("The Court further notes that in his memorandum of law, Denari cites directly to the record rather than to his Rule 56.1 statement.  This is improper.") (citation omitted); *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("[c]itations in the fact section should be to the 56.1(a) or (b) statement of facts only, … [not] directly to pieces of the record").

A party moving for summary judgment cannot expect its motion to be granted if it fails in a significant respect to comply with the rules. This is not an exercise in being persnickety. Especially where (as here) arguments presented in a summary judgment motion are fact-intensive, it is essential to the court's proper consideration of those arguments for the parties to brief their legal and factual positions with reference to the Local Rule 56.1 statements and responses and not to the raw record; the value of the parties' Local Rule 56.1 statements and responses is largely lost if those materials are not cited in the briefs. *See Daoust v. Abbott Labs.*, 2006 WL 2711844, at *4 (N.D. Ill. Sept. 19, 2006) ("Citing directly to the record in the memorandum statement of facts, as [the movant] does here, rather than citing to its 56.1(a)(3) statement, negates the purpose of the summary judgment exercise."). Accordingly, to the extent Defendants seek summary judgment on Mervyn's § 376.12 claims on the ground that the record indisputably shows that Defendants did not breach the Lease, that the alleged breaches occurred outside the limitations period, or that Newesco cannot be held liable for any such breaches, their motion is denied. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) ("[w]e have … repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1") (internal quotation marks omitted, brackets in original); *FirstMerit Bank, N.A. v. 2200 N. Ashland, LLC*, 2014 WL 6065817, at *4-8 (N.D. Ill. Nov. 13, 2014) (denying a summary judgment motion because the movant's brief cited to raw record materials rather than to its Local Rule 56.1(a)(3) statement); *Thorncreek Apartments*, 970 F. Supp. 2d at 839 (same); *Jacobeit*, 2012 WL 1044509, at *2 (same); *Jorden v. United States*, 2011 WL 4808165, at *1 (N.D. Ill. Oct. 11, 2011) (same); *Sledge v. Bellwood Sch. Dist. 88*, 2011 WL 2457920, at *2 (N.D. Ill. June 17, 2011) (same); *see also Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 2010 WL

2035720, at *5 (N.D. Ill. May 19, 2010) ("Failure to comply with Local Rule 56.1 is grounds for denial of a summary judgment motion.").

In so holding, the court recognizes that Mervyn's briefs likewise failed to cite to the Local Rule 56.1 statements and responses; whether that failure would have had advserse consequences for Mervyn had Defendants' briefs been compliant is a moot question that need not be addressed. The court also acknowledges that it elected in Section I, *supra*, and Section III, *infra*, to address certain of Defendants' purely legal arguments on the merits despite their violation of Local Rule 56.1. The court did so because addressing those particular arguments did not require the court to delve into the record or to determine whether there were any factual disputes, rendering the Local Rule 56.1 violation harmless for purposes of those arguments. The same cannot be said of the fact-based arguments addressed in this section of the opinion.

## II. The Unjust Enrichment Claim

Mervyn's unjust enrichment claims alleges that Defendants unjustly enriched themselves when they retained certain sums that should have been returned to Mervyn. Doc. 1 at ¶¶ 53-54. In seeking summary judgment on this claim, Defendants contend that unjust enrichment is "not available when an express contract exists." Doc. 137 at 27. The argument is premature at this stage of the proceedings. In his response brief, Mervyn states that he may end up arguing that the Lease is unlawful and unenforceable. Doc. 175 at 48-49. If Mervyn makes that argument and if it turns out to be right, Texas law (which governs the Lease) would allow him to proceed with his unjust enrichment claim. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense."); *Republic Bankers Life Ins. Co. v. Wood*, 792

S.W.2d 768, 778-79 (Tex. Civ. App. 1990) (rejecting the argument that an unjust enrichment claim must fail if brought alongside a contract claim, and holding that the plaintiff was "allowed to plead in the alternative for equitable relief in the event a jury should find no contract came into existence"); *Freeman v. Carroll*, 499 S.W.2d 668, 670 (Tex. Civ. App. 1973) ("It is true that an express contract and quantum meruit are distinct and different relationships and inconsistent ideas, but the same record may contain evidence which will support either theory. A plaintiff may allege both theories and recover as the evidence may show."). Thus, while Mervyn certainly will not be permitted a double recovery at the end of the day, he may simultaneously pursue his unjust enrichment and other claims for the time being. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'") (quoting Fed. R. Civ. P. 8(d)(2) and (3)).

**Conclusion**

For the foregoing reasons, Defendants' summary judgment motion is denied. Given this disposition, Defendants' motion to strike Mervyn's expert report on damages, Doc. 192, and Defendants' motion to strike Mervyn's Local Rule 56.1 statement and deem certain facts admitted, Doc. 217, are denied as moot.

December 16, 2014

                                            United States District Judge